Haro v. Porter County, Indiana Please and may it please the court. My name is Alexa Bradley and I have the privilege of representing Ms. Raquel Haro, the appellant in this matter. We are here today seeking reversal of the lower court's grant of summary judgment. This case cuts to the core of what must be demanded to preserve human dignity and decency. The Fourth Amendment commands the existence of reasonable suspicion at the moment that a cold stranger carrying the full weight of the system. Is that consistent with Florence? Florence, Your Honor, applied to universal strip searches. They strip searched and did visual body cavity searches on everybody entering the prison. And the majority of the court says that's fine. And everything that you're saying in your brief sounds like it's been taken out of Justice Breyer's dissent. Justice Breyer is a very smart man. He made good points. But he was in dissent. Correct, Your Honor. And our case differs from Florence because there was no universal strip search policy here. Each strip search had to be Doesn't that make the policy better rather than worse? Right? Of course. The jail says we would like to limit how many of these searches we conduct. We try to cut it down and then get sued on the ground that you didn't cut it down enough when they had a right to search absolutely everybody.  It can't be that if you try to be more protective of privacy, you open yourself up to suit. Right, Your Honor. But in Florence, it was recognized and in this court's case in Fonda versus Kankakee County, that Florence did not apply to individuals who could be held apart from the general population. Florence dealt with a universal strip search. I can understand an argument that if somebody is being taken into custody, is going to be held in a solitary cell for two hours and let go, that Florence wouldn't apply. But I gather from this record that your client was housed with her friends, that's what the record says, was not held by herself. Correct. So we've got somebody who was put in a larger population. That's the Florence problem. Correct, Your Honor. She was held in, I think it should be clear that Ms. Harrow and her friends were held outside of the general population. But she was not held by herself. Correct. So do you have some case in the wake of Florence saying that Florence doesn't apply to people who are housed in group settings but short of the general population? Your Honor, we don't have a case on... And if you look at the reasoning in Florence, it would be hard to imagine such a holding. Yes. Let me tell you what worries me about your argument, that the jail tried to be more protective of privacy and therefore it's open to suit. It sounds just like the argument that was before the Supreme Court in Virginia against Moore, where Virginia says you can't make custodial arrests under the following circumstances. You have to issue somebody a ticket and let them go. The police nonetheless make a custodial arrest. And the Supreme Court of Virginia says, well, under our policy, you should not have made this custodial arrest because we are more protective of privacy than the Fourth Amendment. And since you made the arrest anyway, you've just violated the Fourth Amendment. The Supreme Court says, no, you can't enforce state law through this back door of state law protects privacy extra and therefore what the state does becomes the constitutional rule. That's the holding of Virginia against Moore. I'm asking you whether you aren't asking us to do the same thing that the Supreme Court of Virginia did in Virginia against Moore. I don't believe so, Your Honor. I think what is different about a jail, and especially well, this particular case, a jail that does not have the type of universal strip search policy. Florence did talk about the discretion that is used. As a matter of state law, any jail can have a policy more protective of privacy. But the holding of Virginia against Moore is that doesn't make violation of the policy a constitutional violation. The Supreme Court has told us in Florence that the Constitution allows every person coming into a prison to be put in anything other than one person's cell to be strip searched with no reason at all, with no suspicion. But that, Your Honor, is with the application of a universal policy. This court has... You're going back to it all depended on state law, and that's not what Florence was saying. No, Your Honor. I apologize if that's what I've articulated, but that's not what we're trying to assert. It might be helpful to move forward in the sense that you have accepted for purposes of this case that the jail had reasonable suspicion to conduct the bodies case. Correct, yes. You are accepting that for purposes of the argument? Yes. And our position is that the continuation of the search after it was, after Ms. Harrow identified that she was wearing a bodysuit, which Defendant Bradley knew at the time, which she conceded in her deposition, that bodysuits snap in between the legs. At that point... Why at that point... I mean, I've seen the scan. Why at that point would she have to conclude that these were the snaps? Not only for your client's safety. Of course. And, Your Honor, we do... So there are three separate lines that we would assert would not have violated Ms. Harrow's rights. First, we believe that it would have been reasonable for her, for Defendant Bradley to have stopped the search at the moment that Ms. Harrow informed her. Sometimes people lie to the police. Of course. And so... So why would the police... Oh, it must be the bodysuit. So the second point would be the point at which Ms. Harrow unsnapped the bodysuit. At that point, Defendant Bradley would have known, would have heard the snaps. However, the very last point would be... You're equating... The question, to drill down on the point, is you've accepted that the officers had reasonable suspicion to search for contraband. Correct. What is equating the bodysuit with that of contraband? Because your argument is that reasonable suspicion was dispelled. Right. So, Sergeant Watkins and Defendant Bradley both knew at the time of the search that the only grounds for the search, the reasonable suspicion, was a quarter-inch circular dark anomaly that was identified on the body scan. That is consistent with the snap. But it's also consistent with other things. That's the problem. Correct, Your Honor. However, the snaps... If that's correct, then how is reasonable suspicion dispelled? Because where... The question that a reasonable officer would have answered would have been if the anomaly is not these metal snaps, which it was known that the body scan showed, where are these snaps depicted on the scan? And I know that my friend on the other side argues that there could be something hidden behind the snaps. However, that's simply inconsistent with the facts here. There were 12 arrests... But again, reasonable suspicion, and the standard is objective. Yes, Your Honor. And a reasonable officer armed with the facts that Ms. Bradley had in this circumstance, and those facts are that she knew that the justification was the sole quarter-inch anomaly from the body scan in the groin area. She knew that body suits snapped in the groin area. And once she was holding the body suit in her hands, could see that the snaps were on the body suit, at that point, a reasonable officer armed with those facts would have stopped the search. I see that my time is about to expire, and I would like to request the remainder of my time to be held for rebuttal. Certainly, Counsel. Thank you. Ms. Rose. May it please the Court. I think the Court hit on this already, but it is our position that it is not unconstitutional to have continued the search for which we had reasonable suspicion to conduct in the first place. And that's because of two things. In the evidence we have, the anomaly on the body scan did not look, even after we knew that there were snaps in the body suit, it did not look like a circular metal snap. And now we know why. It's because they were all bunched together. But at that point, we did not know what the deal was. And the officer testified that it looked like it could be a pill in a baggie, which is what they were looking for. That was what the reasonable suspicion was. They were also trained, and this is under the Collective Knowledge Doctrine, but they were also trained in this jail that a lot of times, detainees are clever. And so they will hide things behind objects that they know will show up, and hoping that the officer will think, oh, that makes sense, I know what that is, and they won't investigate further. Here, there's no case law that says, at least I have found none, that says once you, because there were not two searches here. We're talking about one strip search. And I guess the question on this reasonable suspicion, once the body suit was found, was there a constitutional obligation for that officer to require Ms. Horace to go back through the body scan machine? We don't believe there was. We believe there was reasonable suspicion at the get-go, and the cases always talk about the initial. Was it dispelled? No. The language that I like in the case is, the only cases that I've seen that talks about this dispelled, and when they're not talking about different searches, you know, they're not talking about doing a Terry stop, and the officer's going further, and then say, well, I didn't find any weapons, but now I'm going to pat you down for something completely different for drugs, or what have you, and that's a different type of search. Cases that are just talking about dispelling, what I've seen is they use that language, which I love, I don't know who had it, but once officers assure themselves that there's no skullduggery is afoot, they must stop the search. And in this case... Where does that come from? I'm sorry, Your Honor, I've got it marked here, I'd have to tell you, it's from a lot of the cases that we've cited. One thing that puzzled me about your brief is that you seem to accept the plaintiff's premise that reasonable suspicion is essential and has to be reassessed as the search continues. I don't see how that premise is consistent with Florence. So I looked at your brief to see what you said about Florence, and the answer is, you don't even cite it. The district court relied on Florence, right? The plaintiff's brief discusses Florence. It's the controlling Supreme Court precedent, and you don't even mention it. It left me incredulous. So are you conceding Florence away, or are you conceding away the benefit of the controlling Supreme Court decision? We are not, Your Honor. That is an oversight argument. Plus, do I understand your failure even to cite it? Your Honor, I don't have a good answer for that. I didn't write the briefs in this, and I know that's not a good answer for you. But we are not conceding away Florence. This was not a blanket strip search, and we believe that we would have had the right to do that had we had a policy. But as this court already noted, we were trying not to have strip searches. And I do not believe there's any case law, at least I have not seen any case law in preparing for this argument that says the reasonable suspicion has to be constantly relooked at. Florence means that you don't need reasonable suspicion. That's why I'm thinking that you're conceding that reasonable suspicion is necessary. That's all you're discussing. You're discussing something that Florence holds as a matter of constitutional law is not relevant. And it leaves me just totally perplexed. The impression I had from Florence is that if the jail had a blanket policy, then it does not need the reasonable suspicion. But if you're looking at individual people... The Constitution does not require reasonable suspicion. That is correct. Local jails or federal jails can require more than the Constitution requires. But failing to carry out your own policy is not a violation of the Constitution. That is correct. And I apologize, Justice Dietrich, because I think that's exactly where the mishap occurred is in that distinction with our own policy. Well, I brought up Virginia v. Moore, where that was the core hold. Yes. This court is correct. But all the cases that are relied upon in terms of this being exceeding the scope of the search, you know, once we knew that there were metal snaps to this bodysuit, are all in the context of officers going outside of... They have permission to do one search, and they go outside of it and do something else. And we just don't believe those are relevant here. So we would ask this court to... We believe that this was constitutional. There is no 1983 viable claim here. Going further, just because we've not mentioned today about qualified immunity, if this court were to find otherwise and find that there was a constitutional violation, which the district court did not, rightfully so, and therefore the district court didn't consider it to be qualified immunity, but we would argue that if the court goes farther, Officer Bradley has qualified immunity, because there was certainly no established case law that said... Or established premise that says at every step you have to reassess just because a person tells you, hey, I've got metal snaps. Or even if you see them, especially like in this case, you know, one of the things we keep hearing is, you know, the metal snaps are there. They would be obvious on the scan. You should have known that they were there. But in reality, there were two sets of metal snaps, and the scan only shows one anomaly. So that right there shows that, again, now we know why. It's because it was all bunched together. But at the time of the search was being conducted, we did not know that, and our officer believed it could be appeal. It could be contraband. And so we believe that there was, you know, even under the qualified immunity doctrine, when you talk about, you know, one thing that has to be shown is that... Here there is no analogous case. They concede that point, and there's no direct case law that's clearly established that would have said we had to do that. And then lastly, under the Monell claim, we would argue, and this is the Sheriff's Department, they were entitled to summary judgment because they did not establish that there was a policy practice or custom that caused a constitutional violation. And here there's certainly no widespread custom or practice, and the key issue under this factor would be whether it was a moving force behind her alleged constitutional violation. Here the moving force was the body scan, and the anomaly that appeared on that body scan that was not consistent, just by looking at it with a metal snap, even when she learned there was metal snaps. And so we would ask this court to affirm the district court. If there's no other questions, I thank you for your time. Thank you, Ms. Rowe. Ms. Bradley, I'll round you up to a whole minute. Oh my goodness, thank you so much, Your Honor. To begin, the skullduggery quote was this court's decision in Lopez v. City of Chicago, and that full quote is, a person stopped on reasonable suspicion must be released as soon as the officers have assured themselves that no skullduggery is afoot. Now that follows Terry and its progeny. I think we have to engage with U.S. v. Freeman. It's a case that comes about three months after the Supreme Court's case in Freeman. In Florence, I'm sorry. And in U.S. v. Freeman, the Seventh Circuit's jail officials must have reasonable suspicion at the initiation. Correct, Your Honor. However, the body of reasonability Fourth Amendment case laws requires that a continual assessment of reasonable suspicion. Florida v. Royer is a fantastic example of that from the United States Supreme Court, and we would assert that that would be the case here. I see that I'm out of time. Thank you, Your Honors. Thank you, Counsel. The case is taken under advisement.